IN THE MATTER OF THE BOARD OF EDUCATION OF THE CITY OF TRENTON, MERCER COUNTY.

Argued May 4, 1981—Decided June 17, 1981.

*Bruce M. Schragger* argued the cause for appellant Board of Education of the City of Trenton (*Schragger, Schragger & Lavine*, attorneys; *Kristina P. Hadinger*, on the brief).

*Mary Ann Burgess*, Deputy Attorney General, argued the cause for respondent New Jersey State Board of Education (*James R. Zazzali*, Attorney General of New Jersey, attorney).

*Fredrica Hochman* argued the cause for intervenors Puerto Rican Congress and Association of Puerto Rican Organizations.

PER CURIAM.

The Appellate Division sustained on appeal an order of the Commissioner of Education and the State Board of Education appointing and assigning "a monitor general" to act as "a general supervisor of all activities" undertaken by the Board of Education of the City of Trenton. As explained by the Appellate Division in a comprehensive opinion by Judge Matthews, published at 176 *N.J.Super.* 553, the order providing for this action encompassed a "corrective action plan" that required the emplacement of a "monitor general," who is to report directly to the Commissioner with respect to the total operation of the school district for the 1979–1980 and 1980–1981 school years. It also enabled the Commissioner to engage the services of an independent auditor, to order the transfer of moneys in the budget and to increase fiscal resources through the county board of taxation. Further elements of the corrective action plan called for in-service training programs, implementation of the school board's affirmative action plan, initiation of "a thorough and efficient program" of special, compensatory and bilingual education, and the formulation of comprehensive plans for needed school facilities and personal staffing. *Id.* at 559–560. The

corrective action plan, as pointed out by the court below, contained many other provisions relating to the operations of the board, the submission of periodic progress reports and procedures to be followed with respect to actions upon personnel recommendations. *Id.* at 560. The Commissioner also directed the assumption of costs, in the amount of $85,000 per year, for the monitor general and support staff. *Id.* The Commissioner's order was approved by the State Department of Education.

We affirm the judgment of the Appellate Division upholding the administrative action of the Commissioner of Education and Department of Education substantially for the reasons presented in the opinion of Judge Matthews. As clearly recognized by the appellate court, the administrative measures at the heart of this litigation were extraordinary but the problems that they sought to address and redress were equally extraordinary. We are satisfied that the powers exercised by the Commissioner and State Board were invoked in highly unusual, virtually unprecedented circumstances. The comprehensiveness of the Commissioner's remedial plan is not indifferent or insensitive to the fundamental understanding that public education be a primary responsibility for local government. Rather, the action of the Commissioner was required by irrefutable exigency. It was established in the record of this case, without substantial contradiction, that "the educational system of the City of Trenton is in an abysmal state, due almost entirely to the mismanagement and incompetence of the members of the local board of education." *Id.* at 559.

The Appellate Division found requisite authority in the Commissioner of Education for the imposition of the corrective plan under *N.J.S.A.* 18A:7A–14 and 15 and ruled that these statutes, part of the Public School Education Act of 1975, *N.J.S.A.* 18A:7A–1 *et seq.*, contain adequate substantive and procedural safeguards for the proper exercise of power by the administrative agencies committed to its implementation—the State Commissioner of Education and the State Board of Education. *Id.* at 561–562. As we observed in *Robinson v. Cahill (Robinson V)*,

69 *N.J.* 449, 461, "[t]he imposition of this duty [to provide for the maintenance and support of a thorough and efficient system of free public schools] carries with it such power as may be needed to fulfill the obligation." It was appropriately emphasized by the lower court, 176 *N.J.Super.* at 562, that the delegation of power under *N.J.S.A.* 18A:7A–15 is broad. In instances where the local board of education has failed to provide a thorough and efficient public education, the statute conveys the authority "to issue an administrative order specifying a remedial plan to the local board of education, which plan may include budgetary changes *or other measures the State board determines to be appropriate*" (emphasis added).

With respect to the particular challenge that the State Board had no statutory authority to direct the Commissioner "to assign a monitor general to full time service within the district as a general supervisor of all activities conducted by the district," we are satisfied that this power may be reasonably implied in the Public School Education Act of 1975. The source of this power does not repose in any single statutory provision. Rather, it emanates from the entire statutory fabric of the 1975 Act in which many statutory components form an interlocking whole, serving to create powers unique their breadth and strength. In dealing with the power to designate a monitor general, the appellate court referred not only to *N.J.S.A.* 18A:4–10, it also gathered support from other statutory provisions, *e. g., N.J.S.A.* 18A:4–22(d), and –23. It emphasized, again, the provisions of *N.J.S.A.* 18A:7A–15, pointing out that the State Board has the power to issue a remedial plan that "may include whatever measures the State board deems appropriate to remedy educational deficiencies within the school district." *Id.* at 564. Those measures would, in our view, encompass the right to designate agents to effectuate the constitutional mandate for a thorough and efficient education. The sweep of the remedial powers of the State Commissioner of Education and State Board of Education has recently been confirmed by this Court. *In the Matter*

*of the Application of the Board of Education of Upper Freehold Regional School District,* 86 *N.J.* 265 (1981).

At oral argument it was contended that school board elections, which have served to change the composition of the board subsequent to the decision of the Appellate Division, obviate the need for corrective administrative action by the State Board and the Commissioner. It was urged that the new board should be given the opportunity to put the local school district in educationally good order and that it is no longer necessary to have a "monitor general" in order to assure compliance with the remedial plan of the Commissioner to achieve a thorough and efficient education.

As we earlier indicated, the powers exercised by the Commissioner and State Board are available and appropriate only in rare cases and, even in those instances, must be invoked with a full appreciation that public education under our governmental system is primarily a local responsibility. Nevertheless, the relief now sought by appellants, essentially a countermand of the administrative order for the designation of the monitor general, has no foundation or support in the record. No proofs were tendered as to conditions within the school district and, in particular, whether any of the egregious deficiencies which gave rise to the Commissioner's order have been removed, corrected or mitigated. We do not find on the basis of the record before us, in which grave educational deficits have been graphically portrayed without refutation, any present justification for disturbing the action of the Commissioner and the State Board. That action, as we view it, sprang from necessity. We assume that it will recede with the evaporation of the necessitous conditions. In this respect, the local school board retains a full measure of ability to control its own destiny. The sooner it creates an atmosphere and takes concrete steps toward educational remediation and progress, the quicker it will be able to achieve a normal measure of local autonomy. Its plaint for

relief from the administrative order should therefore be placed before the Commissioner and the State Board of Education.

Affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justice SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For reversal* —None.