ELIZABETH BALSLEY, AN INFANT BY HER PARENT AND GUARDIAN AD LITEM, SUSAN BALSLEY, PETITIONER–RESPONDENT, v. NORTH HUNTERDON REGIONAL SCHOOL DISTRICT BOARD OF EDUCATION AND ROBERT HOPEK, RESPONDENTS–APPELLANTS.

Argued September 25, 1989—Decided February 1, 1990.

*James P. Granello* argued the cause for appellants (*James P. Granello*, attorney; *Wayne I. Christie*, on the brief).

*Margaret M. Monaco* argued the cause for the intervenor-respondent, New Jersey State Interscholastic Athletic Association (*Hannoch Weisman*, attorneys; *Michael J. Herbert*, on the letter in lieu of brief).

*Anne P. McHugh* argued the cause for petitioner-respondent (*Pellettieri, Rabstein and Altman*, attorneys).

*Francis J. Campbell* argued the cause for *amicus curiae* New Jersey School Boards Association (*Francis J. Campbell*, attorney; *O. Lisa Dabreau*, on the letter in lieu of brief).

*Susan L. Reisner*, Deputy Attorney General, argued the cause for *amicus curiae* Division on Civil Rights (*Peter N. Perretti, Jr.*, Attorney General of New Jersey, attorney).

*Arlene Goldfus Lutz*, Deputy Attorney General, submitted a letter in lieu of brief on behalf of respondent State Board of

Education (*Peter N. Perretti, Jr.*, Attorney General of New Jersey, attorney).

*Elaine M. Song* submitted a brief on behalf of *amicus curiae* Education Law Center (*Elaine M. Song*, attorney; *Marilyn J. Morheuser*, of counsel and on the brief).

The opinion of the Court was delivered by

HANDLER, J.

This appeal poses the issue whether counsel fees can be awarded in a proceeding brought before the Commissioner of Education based on unlawful gender-discrimination. In this case, a public high school student was barred from trying out for the school's football team because of her sex. She filed a complaint under the state's education laws with the Commissioner of Education charging the school board with unlawful discrimination. Following a consent order that allowed the student to participate on the football team, the student made an application for counsel fees. She asserted that such fees would have been recoverable had she brought the action before the Division on Civil Rights under the Law Against Discrimination. The right to such counsel fees is challenged, however, because there is no express statutory authorization for the award of counsel fees in actions brought before the Commissioner of Education under the education laws.

On August 16, 1985, Elizabeth Balsley (hereafter "Balsley" or "complainant"), then a student at North Hunterdon Regional High School, filed a petition with the Commissioner of Education (hereafter "Commissioner") against the North Hunterdon Board of Education (hereafter "school district" or "board") and Robert Hopek, the Athletic Director of the high school, challenging her exclusion from the high school football team. She contended that this exclusion violated the state's education laws, the equal protection provisions of the federal and state constitutions, and federal civil-rights provisions.

The Commissioner referred the matter to the Office of Administrative Law pursuant to *N.J.S.A.* 52:14F–1 to –11. Balsley applied for immediate interim relief. On August 20, the Administrative Law Judge (ALJ) recommended a restraining order prohibiting the board "from denying petitioner the opportunity to compete, try out and qualify for membership on the ... football team." On August 22, the Commissioner adopted the ALJ's recommendation.

On August 28, the school board agreed not to oppose entry of the interim relief order as the permanent restraining order. Following a dispute over the form of the order, resolved on September 12, a permanent restraining order was entered confirming the student's right to participate on the football team. The next day, complainant moved before the Office of Administrative Law to amend her petition to include allegations based on the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42 (hereafter, "LAD"), and a request for attorney's fees and costs pursuant to *N.J.S.A.* 10:5–27.1. Over objection, the ALJ granted Balsley's motion.

On October 4, 1985, Balsley applied to the ALJ for an award of $9,882.50 in attorney's fees and $133.37 in costs. The school district and Hopek opposed the application. On March 14, 1986, the ALJ entered an Initial Decision finding that although the Commissioner of Education does not have the authority to award counsel fees pursuant to the attorney's-fees provision of the LAD, *N.J.S.A.* 10:5–27.1, or the federal civil-rights attorney's-fees provision, 42 *U.S.C.* § 1988, the Commissioner could award a fee under the state's education laws, *N.J.S.A.* 18A:1–1 to :76–4. He awarded Balsley counsel fees of $5,343.75. On May 1, 1986, the Commissioner rejected the ALJ decision, ruling that the education laws do not authorize the award of attorney's fees. On September 3, 1986, the State Board of Education affirmed the Commissioner's decision.

The Appellate Division reversed the State Board, holding that although the Commissioner of Education did not have authority

to award counsel fees under the education laws, he could award attorney's fees under the LAD. *Balsley v. North Hunterdon Regional High School*, 225 *N.J.Super.* 221 (1988). This Court granted the petition of the school board and Hopek for certification, 114 *N.J.* 287 (1988).

## I.

The Division on Civil Rights under the Law Against Discrimination is empowered to award counsel fees as a remedy for a successful complainant. The State's education laws contain no express authority that enables the Commissioner of Education to award counsel fees as a remedy to a complainant for acts of discrimination in violation of the education laws. The issue before the Court is whether the Commissioner of Education may award counsel fees as a remedy to a complainant who succeeded in her gender-discrimination claim brought before the Commissioner under the education laws and who in the course of those proceedings asserted that her gender-discrimination claim also constituted a violation of the Law Against Discrimination, entitling her to counsel fees.

The State's education laws provide that the Commissioner of Education has jurisdiction to determine all controversies and disputes arising under those laws. *N.J.S.A.* 18A:6–9. The education laws further provide:

> No pupil in a public school in this State shall be discriminated against in admission to, or in obtaining any advantages, privileges or courses of study of the school by reason of race, color, creed, sex or national origin. [*N.J.S.A.* 18A:36–20.]

Clearly, the claims of public-school pupils based on unlawful discrimination in education are controversies or disputes under *N.J.S.A.* 18A:6–9.

The Appellate Division agreed with the conclusion of the Commissioner and the State Board that the Commissioner "does not have plenary authority to award counsel fees in determining 'controversies and disputes' presented to him under *N.J.S.A.* 18A:6–9." 225 *N.J.Super.* at 225. Nevertheless,

the Appellate Division concluded that the Commissioner could award counsel fees in this case. It reasoned that, under the circumstances, the Commissioner of Education could invoke the remedial authority provided by the LAD. That power specifically included the authority to award counsel fees pursuant to *N.J.S.A.* 10:5-27.1, which provides that "[i]n any action or proceeding brought under this act, the prevailing party may be awarded a reasonable attorney's fee...." *Id.* at 228.

In reaching this conclusion, the Appellate Division relied primarily on *Hinfey v. Matawan Regional Bd. of Education*, 77 *N.J.* 514 (1978). In that case, plaintiff filed a complaint with the Division on Civil Rights charging that the Borough of Matawan, the Matawan Regional Board of Education, and the Superintendent of Schools had discriminated against women on the basis of gender and marital status through employment practices in athletics within the high school and middle schools. Plaintiff also alleged other instances of discriminatory treatment of girls in school sports. The central issue was whether the Commissioner of Education could or should adjudicate such complaints brought before the Division on Civil Rights. This Court determined that the Division on Civil Rights and the Department of Education have concurrent jurisdiction over complaints alleging sex discrimination in public school courses of study. It did not follow, however, that both agencies would be compelled to exercise simultaneously their respective jurisdiction over the matter. We held under principles of administrative comity that "discrimination complaints involving the subject matter of public school curricula and courses of study should be handled by the Commissioner ... and that such complaints, though filed originally in the Division ... should be transferred to the Commissioner of Education," *id.* at 520, and, further, that the Division on Civil Rights did not act improperly "in staying its regulatory hand and in deferring to the Commissioner in matters of school curricula." *Id.* at 534.

We further explained our determination in *Hinfey* in *City of Hackensack v. Winner*, 82 *N.J.* 1, 31–38 (1980). We there

emphasized that considerations of administrative comity apply to agencies with concurrent jurisdiction and that such considerations entail a determination of which agency has the predominant interest over the subject matter of an administrative proceeding. This decision in turn indicates which agency should proceed first to exercise jurisdiction, and which should defer or abstain, and, further, the effect, if any, of the disposition of the lead agency in any subsequent proceeding before the abstaining agency with respect to any remaining claims or issues. *Compare Kiss v. Department of Community Affairs,* 171 *N.J.Super.* 193, 198 (App.Div.1979) (Division on Civil Rights and Civil Service Commission have concurrent jurisdiction over employment discrimination case; "[a]lthough the [LAD] vests the Division on Civil Rights 'with power to prevent and eliminate discrimination in the manner prohibited by this act ...,' *N.J.S.A.* 10:5–6, the statute does not specify that Civil Rights has exclusive jurisdiction to enforce the act or exclusive jurisdiction over all instances of discrimination.") *with Jamison v. Rockaway Township Bd. of Educ.,* 171 *N.J.Super.* 549, 552 (App.Div.1979) (Division on Civil Rights may decide *not* to transfer employment-discrimination case to Commissioner of Education; "[a]lthough *Hinfey* ... recognized that the Division and the Commissioner enjoyed concurrent jurisdiction in appropriate situations, it did not hold that all cases involving school problems should be decided by the Commissioner.")

The Appellate Division in this case did not fully appreciate that the principle of administrative comity focused on the cooperation between agencies with concurrent jurisdiction, and did not contemplate that one such agency would preempt or assume the jurisdiction of the other. The court here, however, held not only that the Commissioner of Education rather than the Division on Civil Rights should determine the education gender-discrimination charge but also that the Commissioner should apply the LAD: It regarded *Hinfey* "as authority for the proposition that the Commissioner may enforce the Law Against Discrimination insofar as it bears on the controversy or

dispute presented to him under *N.J.S.A.* 18A:6–9." 225 *N.J.Super.* at 228.

The Appellate Division found some support for its holding from the LAD itself, which the court construed as authorizing the Commissioner of Education to exercise the LAD's remedial provisions in an education controversy. The LAD expressly conveys extensive remedial powers to the Director of the Division on Civil Rights. *See, e.g., Shaner v. Horizon Bancorp.,* 116 *N.J.* 433 (1989); *Terry v. Mercer County Bd. of Chosen Freeholders,* 86 *N.J.* 141 (1981). These powers include the authority to award counsel fees as a special remedy. *N.J.S.A.* 10:5–27.1. *Shaner v. Horizon Bancorp., supra,* 116 *N.J.* at 439. The Appellate Division noted that the LAD's attorney's-fees provision does not expressly limit the award of counsel fees to proceedings brought under the LAD before the Division on Civil Rights and reasoned that

[c]ounsel fees thus can be awarded in any forum in which the action is properly brought. The legislature has provided that such actions may be brought in the Division or in the Superior Court, *N.J.S.A.* 10:5–13, and the Supreme Court has held in *Hinfey* that the Commissioner shall entertain those claims arising in the public school setting. Since actions under the Law Against Discrimination may be brought in all three forums, *N.J.S.A.* 10:5–27.1 is fairly read as permitting all to award counsel fees. [225 *N J.Super.* at 228–29 (footnote omitted).]

The Division on Civil Rights concurs, noting in its *amicus curiae* brief that "just as fees can be awarded in LAD actions in Superior Court, they can be awarded in a LAD complaint which is required to be heard by the Commissioner of Education."

█ We cannot construe the current legislative scheme to authorize the award of counsel fees by the Commissioner in education-discrimination proceedings brought before the Commissioner, as in this case, or transferred to the Commissioner, as in *Hinfey.* In 1979, the Legislature expressly authorized bringing a LAD action in the Superior Court. *L.*1979, *c.* 404, § 1; *N.J.S.A.* 10:5–13. Counsel fees also were added in 1979 to the LAD as a special remedy. *L.*1979, *c.* 404, § 6; *N.J.S.A.* 10:5–27.1. In amending the LAD to authorize expressly bring-

ing a LAD action in the Superior Court and to provide also that counsel fees could be awarded in "any action or proceeding," the Legislature obviously intended that such fees would be available in such a court action or administrative proceeding before the Division on Civil Rights. There is not the slightest indication, however, that the Legislature intended that counsel fees would be available in an action brought before an administrative agency other than the Division on Civil Rights. The availability of counsel fees in judicial actions can be posited on the express contemporaneous legislative authorization to bring a judicial action under the LAD. *See Shaner, supra,* 116 *N.J.* at 439. Indeed, a LAD action brought in the Superior Court is governed by the LAD and divests the Director of jurisdiction, unlike an education-discrimination action brought before, or transferred to, the Commissioner, which does not pre-empt the exercise of jurisdiction by the Director of the Division on Civil Rights over residual issues. Thus, the statutory language and scheme of *N.J.S.A.* 10:5–27.1 do not suggest that the Legislature contemplated a counsel fees remedy for "any action or proceeding" that is not brought expressly under the LAD in the Superior Court or the Division on Civil Rights.

In an education-discrimination case brought pursuant to *N.J. S.A.* 18A:6–9, the Commissioner of Education exercises the statutory and regulatory authority vested by the education laws. The Commissioner has long had significant responsibility and sweeping remedial powers for enforcing equal protection in the administration of the public education laws. *E.g., Jenkins v. Township of Morris School Bd.,* 58 *N.J.* 483 (1971); *Booker v. Plainfield Bd. of Educ.,* 45 *N.J.* 161 (1965). This statutory authority has not been construed or exercised to include the power to award counsel fees. None of the cases cited by the complainant, which illustrate the Commissioner's broad remedial powers, *see, e.g., Board of Educ. of Elizabeth v. City Council,* 55 *N.J.* 501 (1970); *Board of Educ. of East Brunswick Township v. Township Council,* 48 *N.J.* 94 (1966); *Laba v. Newark Bd. of Educ.,* 23 *N.J.* 364 (1957); *Board of Educ. of*

*Newark v. Levitt,* 197 *N.J.Super.* 239 (App.Div.1984); *In re Trenton Bd. of Educ.,* 176 *N.J.Super.* 553, 563–64 (App.Div. 1980), aff'd, 86 *N.J.* 327 (1981), supports the conclusion that the Commissioner of Education has the authority to award counsel fees to a successful complainant in an education-discrimination dispute or controversy. Indeed, the absence of express statutory authority is fatal to the claim for counsel fees. As acknowledged by the Appellate Division, " 'legal expenses ... are not recoverable absent express authorization by statute, court rule, or contract.' " 225 *N.J.Super.* at 226 (quoting *State, Department of Environmental Protection v. Ventron Corp.,* 94 *N.J.* 473, 504 (1983)); *see also Cohen v. Fair Lawn Dairies, Inc.,* 86 *N.J.Super.* 206 (App.Div.), aff'd 44 *N.J.* 450 (1965); *Jersey City Sewerage Auth. v. Housing Auth. of New Jersey,* 70 *N.J.Super.* 576 (Law Div.1961), aff'd 40 *N.J.* 145 (1963). The LAD, *N.J.S.A.* 10:5–27.1, can be added to the list of statutorily authorized recoverable legal fees that includes *N.J.S.A.* 56:10–10 (Franchise Practices Act); *N.J.S.A.* 59:9–5 (Tort Claims Act); *N.J.S.A.* 56:8–19 (Consumer Fraud Act); *N.J.S.A.* 2A:35A–10 (Environmental Rights Act); *N.J.S.A.* 30:13–8 (Nursing Home Bill of Rights); and *N.J.S.A.* 45:15–37 (Real Estate Guaranty Fund). *See Coleman v. Fiore Bros.,* 113 *N.J.* 594, 596–97 (1989); *Van Horn v. City of Trenton,* 80 *N.J.* 528, 538 (1979); *Gerhardt v. Continental Ins. Companies,* 48 *N.J.* 291, 301 (1966).

Moreover, we are unpersuaded that the omission of a counsel-fee remedy from the education laws confirms a legislative understanding that the Commissioner by implication already had such authority under *Hinfey.* It may be presumed that in amending the LAD in 1979 to allow the award of counsel fees, the Legislature was cognizant of the Court's decision in *Hinfey.* The case, however, determined only that the Director's jurisdiction over discrimination cases involving public education was concurrent with that of the Commissioner of Education and that, under particular circumstances, Division action could be withheld or deferred pending the Commissioner's disposition.

*Hinfey* does not suggest that under such circumstances, involving an initial proceeding before the Commissioner, the exercise of jurisdiction by the Commissioner would become preemptive or that it would assume the authority of the Director under the LAD. *See City of Hackensack v. Winner, supra,* 82 *N.J.* 1. *Hinfey* recognized that the proceeding before the Commissioner would be "consistent" with a proceeding before the Division, not that any disposition by the Commissioner would then preempt action by the Division or that, following action by the Division, the determinations and remedial relief of the respective agencies would be mirror images of one another. In this context, the exercise of concurrent jurisdiction is not the exercise of identical authority.

The Appellate Division, as earlier noted, felt that because the complainant could have brought her action before the Division and, if successful, could have claimed counsel fees under *N.J.S.A.* 10:5–27.1, the fact that she proceeded before the Commissioner should not deprive her of that remedy and that prohibiting the Commissioner from awarding counsel fees "would be to deny all protection of the Law Against Discrimination to persons victimized in a public school setting." 225 *N.J.Super.* at 227–28 (citations and footnote omitted). Balsley argues that the Commissioner has jurisdiction to award fees under the LAD because "the concurrent authority to enforce the civil rights laws vested in both agencies cannot be applied piecemeal." The Division suggests in its brief that in an education-discrimination case it would be "unfair" not to permit the Commissioner to award counsel fees to a successful petitioner.

Both *Hinfey* and *Winner* expressly recognized that in a context invoking administrative comity, the agency that deferred action under the predominant-interest standard necessarily retained jurisdiction over any issues not fully adjudicated in a manner consistent with its own non-delegable responsibilities. Hence, in an appropriate case, a complainant should not be deprived of any determination or relief that would be available

before such an agency simply because the predominant-interest agency heard and determined her substantive claim. It does not follow, however, that the predominant-interest agency can provide that remedy. A complainant armed with a successful determination and supported by an adequate record following a proceeding before the predominant-interest agency can proceed to the agency that deferred action for a determination of whether an unresolved claim or additional relief should be addressed under the laws defining its own jurisdictional responsibilities.

■ In this case, Balsley did not file claims in both agencies, the Division and the Commissioner. If she had, the rules of the Office of Administrative Law would authorize the severance of a claim under the LAD for counsel fees even if the actions were consolidated and transferred to the Commissioner under the predominant-interest test. The result should not be different where, as here, the only action brought was filed with the Commissioner. Balsley should not be deprived of entitlement to such an award solely as a consequence of properly pursuing her discrimination claim before the Commissioner. Supported by the successful resolution of her substantive claim by the Commissioner, Balsley should have the right to invoke the jurisdiction of the Division and seek counsel fees.

The Division contends that such a structure would require the Commissioner in this case either to transfer the case back to the Division for a hearing on attorney's fees or to direct the presiding ALJ to issue an initial decision addressing both the merits of the discrimination issue and the attorney's fees claim if appropriate, with the Commissioner ultimately to decide the discrimination issue, and the Division ultimately to decide the fee. Because the Division could not decide the fee issue until after the Commissioner has ruled on the merits, the Division says that approach is "impractical and cumbersome" and the result not sound. The Education Law Center, as *amicus curiae*, also suggests that "additional procedural requirements"

such as a remand to the Division "to obtain attorney's fees can only act to discourage education plaintiffs from vindicating their civil rights."

This procedural course, however, is essential to preserve the jurisdictional integrity of the respective agencies. Moreover, such a procedural course is currently in place. The rules adopted by the Office of Administrative Law, *N.J.A.C.* 1:1–17.1 to –17.8, codify the important considerations this Court identified in *Winner, supra,* 82 *N.J.* at 33–34. These rules under Subchapter 17 deal generally with "Multiple Agency Jurisdiction Claims." Where such claims are lodged in two agencies, the ALJ shall determine the "predominant interest in the conduct and outcome of the matter," *N.J.A.C.* 1:1–17.5(a), including "[w]hether the claims, if ultimately vindicated, would require specialized or particularized remedial relief available in one agency but not the other," *N.J.A.C.* 1:1–17.5(a)(4). The rules expressly recognize that "particular issues in the entire controversy [may be] clearly severable." *N.J.A.C.* 1:1–17.6(a). They also provide that the agency that has proceeded first "shall render the final decision" only on "all issues within the scope of its predominant interest." *N.J.A.C.* 1:1–17.6(b). Further, "[i]f there are requests for relief which may not be granted by the agency with the predominant interest, the judge shall ... specify clearly which determination by the agency with the predominant interest shall bind the agency subsequently considering any application for relief." *N.J.A.C.* 1:1–17.6(c). These procedural rules, testifying to principles of administrative comity, buttress the conclusion that in this case claims for counsel fees invoke a special or particular remedy that is clearly within the authority of the Division on Civil Rights and must be presented before that agency.

In sum, the Division on Civil Rights and the Commissioner of Education have concurrent jurisdiction in discrimination cases concerning education. Because the discrimination occurs in a public education context, the Commissioner has the predominant interest in the subject matter. However, even though

complainant properly filed her petition with the Commissioner of Education, the amendment of her petition to assert a claim for relief in the form of counsel fees under the LAD presented issues cognizable only before the Division on Civil Rights. The specialized remedy of counsel fees is not one within the statutory authority of the Commissioner but is available only in the Division on Civil Rights. Hence, under our decisional law and the general standards of the current rules of the Office of Administrative Law, the Commissioner of Education should not determine that claim for relief. Rather, the complainant should have filed that claim in the Division on Civil Rights or, the Commissioner having granted the application, applied to sever and transfer that claim to the Division for disposition as the Director deems appropriate in accordance with the statutory policies and regulatory standards of the LAD.

### III.

The Appellate Division, having determined that the Commissioner was authorized to award counsel fees, albeit under the LAD, addressed the merits of the counsel fee claim. Because we have determined only the Director can award counsel fees, we must decide initially whether complainant's entitlement to counsel fees should be considered, because the Director has not had the opportunity to consider the application. We believe that we cannot definitively resolve that claim on this record. Some comment on this issue, however, is appropriate.

Balsley has contended that she is entitled to counsel fees because the ALJ's order, subsequently confirmed in a permanent consent order, granted her the relief sought, and that she could not have secured this result without this litigation. The Appellate Division agreed with Balsley, concluding that she is a "prevailing party" in an action "brought under" the LAD, *N.J.S.A.* 10:5–27.1, and is thus entitled to recover counsel fees.

We note, however, that there was a dispute over the form of the final restraining order barring the school board from pre-

venting the student from participating on the football team. A proposed order for permanent injunctive relief stated that the order was based on the Commissioner's "having determined that the petition set forth a *prima facie* case of sex discrimination under the laws of the State of New Jersey." That provision was opposed and the ALJ required complainant to "amend the proposed Order for Permanent Injunctive Relief to strike reference to a *prima facie* case of sex discrimination under the laws of the State of New Jersey. Rather, reference shall be made to the original Order entered in the case by written decision."

Those circumstances illustrate the difficulty of determining whether a party should be deemed to have prevailed for purposes of recovering counsel fees, at least in the setting of an administrative civil-rights proceeding. *Compare Urban League of Greater New Brunswick v. Mayor and Council of Carteret,* 115 *N.J.* 536, 539 (1989) ("The difficulty with [petitioner's] position [was] that throughout [the] prolonged litigation there was no adjudication of the alleged violation of Title VIII.") *with Singer v. State,* 95 *N.J.* 487, 494 (1984) (A litigant can qualify as a "prevailing party" if action was "causally related to securing the relief obtained" and if the party's "efforts are a 'necessary and important' factor in obtaining the relief." (citation omitted.))

The Division on Civil Rights in its brief indicates why this issue is unclear and complicated:

[Unlike § 1988 and Title VII precedent,] [b]y statute, the Division is required to attempt settlement of all complaints in which the agency's investigation has resulted in a Finding of Probable Cause. *N.J.S.A.* 10:5–16[.] Pursuant to its regulations, the agency also encourages settlement during the investigatory stage prior to a probable cause determination. *N.J.A.C.* 13:4–2.3. Conciliation is a neutral process whereby a Division conciliator works with the parties to determine what damage and other relief complainant is seeking, what respondent is willing to offer, and whether any compromise is possible. A large percentage of complaints are settled during either the investigatory or post-probable cause conciliation process. In this context, wholesale application of a rule that complainant can "prevail" through settlement and later apply for counsel fees based on the settlement, could give rise to an application for

counsel fees following every successful conciliation. This would defeat the statutory purpose of conciliation to efficiently and expeditiously resolve cases and could severely burden the agency with time-consuming litigation over attorney's fees in cases that were otherwise settled. The Division therefore requests that however the Court rules on the facts of this case, it not issue a decision which would be so broad as to require the Division to entertain applications for attorney's fees following successful administrative conciliation.

Those considerations persuade us that if a claim for counsel fees is to be entertained in these circumstances, it should ultimately be presented to the Director of the Division on Civil Rights under the LAD. We do not, however, resolve either the procedural or meritorious disposition of the claim for counsel fees. Hence, we remand the matter to the Office of Administrative Law for an initial determination concerning the claim for counsel fees consistent with its current rules. Any initial decision by the Office of Administrative Law would be subject to the review and final determination of the Director of the Division on Civil Rights.

## IV.

The judgment of the Appellate Division is reversed and the matter remanded to the Office of Administrative Law for proceedings in conformity with this opinion. No costs.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.