**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0868-18T3

IN THE MATTER OF THE
REVOCATION OF THE
CERTIFICATES OF ANDREA
GIUFFRIDA, STATE BOARD
OF EXAMINERS.

_____

Argued December 16, 2019 – Decided February 19, 2020

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the New Jersey Commissioner of Education, Docket No. 3-5/18A.

Sanford R. Oxfeld argued the cause for appellant Andrea Giuffrida (Oxfeld Cohen, PC, attorneys; Sanford R. Oxfeld, of counsel; Gail Oxfeld Kanef, on the brief).

Jennifer Victor Hoff, Deputy Attorney General, argued the cause for respondent New Jersey Commissioner of Education (Gurbir S. Grewal, Attorney General, attorney; Donna Sue Arons, Assistant Attorney General, of counsel; Joan M. Scatton, Deputy Attorney General, on the brief).

PER CURIAM

Andrea Giuffrida appeals from the final decision of the Commissioner of the New Jersey Department of Education (Commissioner), upholding the State Board of Examiners' (Board) decision revoking her teaching certificates: Teacher of Elementary School Certificate of Eligibility with Advance Standing; Teacher of Students with Disabilities; and Learning Disabilities Teacher – Consultant. On appeal, she argues:

POINT ONE

HERE[,] WHERE THE AGENCY BELOW LACKED AN OPPORTUNITY TO JUDGE CREDIBILITY[,] THIS COURT MUST APPLY A DE NOVO OR MORE PROBING STANDARD OF REVIEW

POINT TWO

THE EXTREME DELAY IN RENDERING A FINAL DECISION GIVES LIFE TO THE MAXIM "JUSTICE DELAYED IS JUSTICE DENIED" AND THE COMMISSIONER FAILED TO CONSIDER APPELLANT'S REHABILITATION DURING THE PERIOD OF DELAY

POINT THREE

THE STATE BOARD FAILED TO CONSIDER ANY MITIGATING FACTORS

POINT FOUR

BECAUSE NO STUDENTS WERE INVOLVED IN THE INCIDENTS, THE REVOCATION PUNISHMENT IS TOO SEVERE

2

We are constrained to reverse and remand because the Commissioner's affirmance of the Board's decision, based on the adoption of the credibility findings of an administrative law judge (ALJ) who did not sit as the judge at the hearing, was arbitrary and capricious.

Following accusations that she acted inappropriately towards male colleagues on numerous occasions, a school district imposed a sixty-day suspension about three months after it hired Giuffrida in August 2011. In January 2012, she was removed from her position as a non-tenured teacher.

The Board thereafter issued Giuffrida an order to show cause why her certificates should not be suspended or revoked because of her behavior. The matter was transferred to the Office of Administrative Law (OAL), and a hearing took place before an ALJ on April 15, 2013 and February 18, 2014; the record was closed in July 2014. The ALJ (first ALJ) retired without issuing an initial decision. The case was not transferred to another ALJ (deciding ALJ) until April 2017.

In her October 13, 2017 written decision, the deciding ALJ recounted the testimony of the witnesses who appeared before the first ALJ, including that of three male teachers who alleged Giuffrida inappropriately touched them; one of those teachers said Giuffrida made inappropriate comments to him. The judge

recognized that Giuffrida "denied that she acted inappropriately toward any of her male colleagues and argue[d] that either the allegations are untrue or friendly gestures to co-workers [that] have been misinterpreted to the Board."

In the deciding judge's findings of fact, she wrote:

> Where facts are contested, the trier of fact must assess and weigh the credibility of the witnesses for purposes of making factual findings as to the disputed facts. Credibility is the value that a finder of the facts gives to a witness' testimony. It requires an overall assessment of the witness' story in light of its rationality, internal consistency and the manner in which it "hangs together" with the other evidence. Carbo v. U.S., 314 F.2d 718, 749 (9th Cir. 1963). "Testimony to be believed must not only proceed from the mouth of a credible witness but must be credible in itself" in that "[i]t must be such as the common experience and observation of mankind can approve as probable in the circumstances." In re Perrone, 5 N.J. 514, 522 (1950). Overall, the witnesses against Ms. Giuffrida had no reason to fabricate the incidents that they recounted in their testimony. Their testimony was specific and credible.
>
> Based on the evidence presented at the hearing as well as on the opportunity to observe the witnesses and assess their credibility, I FIND the following[.]

The judge's ensuing findings demonstrate that the facts of the case were highly disputed, and the resolution of those disputes rested largely on the witnesses' credibility.

4

The judge found Giuffrida "grabbed [P.B.'s][1] rear-end in the office." The judge continued:

> Ms. Giuffrida denied grabbing [P.B.'s] rear-end as he stood showing a picture of his daughter to a secretary in the office. She explained in her summation that somehow brushing up against [P.B.] was misinterpreted. However, even she could not come up with a reason that [P.B.] would fabricate the specifics of such a story. Although I did not see the witnesses as they testified, [P.B.'s] testimony was very credible in describing what he recognized as a distinct grab. It was not a touch or anything else that could have been misinterpreted. When considering how the testimony hangs together with the other evidence, [P.B.] is certainly the more believable of the two.

Based on her admission that she hugged him and her answers to interrogatories in which she admitted kissing him on the cheek, the judge further found Giuffrida hugged D.D. and kissed him on the cheek. The judge also found as undisputed that Giuffrida sent an email to D.D. "because she had gotten 'a vibe' from him that she thought that it may have been an uncomfortable thing for him and she did not want it to be," "saying that she was sorry if her touching him made him feel uncomfortable."

---

[1] We use the male teachers' initials to protect their privacy inasmuch as some of the allegations involve alleged unreciprocated sexual conduct by Giuffrida.

A-0868-18T3

The judge also found, despite that Giuffrida "denied having made inappropriate comments to [D.D.] that her breasts do not look bad for a woman over forty," that comment was made because D.D. was

> the more credible witness. The comment was too specific for [D.D.] to have made it up and it is consistent with the other evidence presented that Ms. Giuffrida would make a comment like that. I therefore FIND that sometime prior to November 2011, Ms. Giuffrida said to [D.D.] words to the effect that, "[m]y breasts don't look bad for a woman over forty, do they?" The comment was totally inappropriate and made [D.D.] feel awkward and shocked. He did not tell her that he felt that way at any time.

Lastly, the judge found Giuffrida admitted kissing J.F., but that Giuffrida

> disagre[ed] that the kiss was on the lips and believes that the kiss was closer to the cheek. Again, Ms. Giuffrida lacks credibility when considering the totality of the evidence against her. I therefore FIND that Ms. Giuffrida inappropriately kissed [J.F.] on the lips in the presence of other staff members. I further FIND that the kiss was unwanted and [J.F.] was embarrassed, surprised and shocked by it. I further FIND that [J.F.] told her that her actions were inappropriate and that he asked that she never do it again.

The deciding ALJ recommended the suspension of Giuffrida's teaching certificates.

Both parties filed cross-exceptions, and the Board issued a final decision adopting the deciding ALJ's initial decision, citing in part to the judge's

6

credibility findings, but modified the penalty to impose a complete revocation of Giuffrida's certificates. In so holding, the Board noted:

> Giuffrida systematically engaged in behavior that violated all norms of acceptable conduct in a workplace environment. Moreover, her actions embarrassed and discomfited her colleagues. Her arguments that any penalty is unnecessary because she's "learned her lesson" or inappropriate because of the lengthy passage of time are misplaced. The Board's focus is and should be on Giuffrida's conduct at the time it happened and its impact upon those around her. . . . The Board therefore believes that the appropriate penalty in this matter is the revocation of her certificates.

Giuffrida appealed to the Commissioner who, in affirming the Board's decision "for the reasons expressed therein," recognized "[t]he Board stresse[d] that it did not reject or modify any findings of fact nor any of the ALJ's conclusions with respect to the findings of unbecoming conduct[.]" The Commissioner determined the conduct that was "amply supported by the record" included:

> grabbing the rear-end of a co-worker; kissing a co-worker on the lips in front of other staff members; hugging and kissing another co-worker; and making comments such as, "my breasts don't look bad for a woman over forty."

The Commissioner concluded: "There is nothing in the record to suggest that the Board's decision to revoke [Giuffrida's] certificates – based on the nature

and extent of the unbecoming conduct proven at the OAL – was arbitrary, capricious or unreasonable."

Our review of that decision is limited. In re Carter, 191 N.J. 474, 482 (2007). We will not upset the decision of an administrative agency "absen[t] . . . a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963). In determining whether an agency action was arbitrary, capricious or unreasonable, we are obliged to consider:

> (1) [W]hether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).]

When the agency's decision satisfies those criteria, we are cognizant of our responsibility to afford "substantial deference to the agency's expertise and superior knowledge of a particular field." In re Herrmann, 192 N.J. 19, 28 (2007). That deference also applies to our review of the disciplinary sanction the agency chose to impose. Ibid.; In re Stallworth, 208 N.J. 182, 195 (2011).

A-0868-18T3

Of course, among those disciplinary sanctions is the express authority granted to the Board to "revoke" teaching certificates, N.J.S.A. 18A:6-38, on the basis of "inefficiency, incapacity, conduct unbecoming a teacher, or other just cause," N.J.A.C. 6A:9B-4.4.

While we also defer to an agency's final determination based on the ALJ's findings of fact and credibility, see Burlington Cty. Bd. of Soc. Servs. v. G.W., 425 N.J. Super. 42, 47 (App. Div. 2012), and to the Commissioner's adoption of credibility findings, we do so because the ALJ had the first-hand opportunity to observe the witnesses, assess their demeanor, and determine which witnesses, if any, are credible, In re Taylor, 158 N.J. 644, 656 (1999).

That deference is unwarranted here because, contrary to the legion of cases expressly prohibiting the practice, see e.g., Conforti v. Guliadis, 128 N.J. 318, 322-23 (1992), the deciding ALJ judged the witnesses' credibility without hearing their testimony, see Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988).

We are mindful that "it is the agency's function, not the [ALJ]'s, to make the findings of fact and . . . the ultimate decision" in the case. N.J. Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils., 189 N.J. Super. 491, 505 (App. Div. 1983) (quoting N.J. Bell Tel. Co. v. State, 162 N.J. Super. 60, 77 (App. Div.

9

1978)).  The final decision adopted by the Commissioner, however, fully considered the credibility findings based only on the ALJ's review of the cold transcripts.  As such, it cannot be determined, absent that evidence, "whether the record contains substantial evidence to support the findings on which the agency based its action[.]"  Mazza, 143 N.J. at 25.

We decline to exercise de novo review of the record to determine if the Commissioner could have reached the same conclusion without those factual findings based on the deciding judge's credibility findings; that is, would the decision have been supported by the record without reference to those findings.  See Herrmann, 192 N.J. at 27-28.  If we parsed the expurgated factual findings, we would be unable to apply the Commissioner's expertise in this educational disciplinary matter, to which we owe substantial deference.  Id. at 28.

The Court's observations in Abbott v. Burke, 100 N.J. 269, 300-01 (1985), albeit made in addressing the proper procedure in school-funding controversies, are apt in this case:

> [T]he issues of educational quality and municipal finance may be more effectively presented, comprehended, and assessed by a tribunal with the particular training, acquired expertise, actual experience, and direct regulatory responsibility in these fields.  For these reasons, the Court has repeatedly acknowledged and approved the administrative handling of educational controversies that arise in the

10

context of constitutional and statutory litigation, including evaluation of local educational problems, design of remedial measures, and supervision of the program implementation. E.g., In re Trenton Bd. of Educ., 86 N.J. 327 (1981) (concerning operation of classroom programs, revenue raising and budgeting, and affirmative action); In re Upper Freehold Reg'l Sch. Dist., 86 N.J. 265 (1981) (concerning physical plant and revenue raising); [Hinfey v. Matawan Reg'l Bd. of Educ.], 77 N.J. 514 (1978) (concerning discrimination in academic courses of study and curriculum); Dunellen Bd. of Educ. v. Dunellen Educ. Ass'n, 64 N.J. 17 (1973) (concerning school administration); Jenkins v. Morris Twp. Sch. Dist., 58 N.J. 483 (1971) (concerning integration).

We remand this matter to the Commissioner to decide whether the record, devoid of the evidence based on the deciding ALJ's credibility findings, sufficiently supports the revocation of Giuffrida's teaching certificates. If that determination cannot be made on the redacted record, a new hearing before a different ALJ should be held because the deciding ALJ has already made credibility determinations. See In re Wolf, 231 N.J. Super. 365, 378 (App. Div. 1989) (remanding a case to a different ALJ because "the ALJ who initially heard the case . . . made credibility findings which might [have been] difficult to disregard after a rehearing").

In light of our decision, we need not address Giuffrida's remaining arguments. Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0868-18T3