Raymond P. FARLEY, Plaintiff,

v.

NORTH BERGEN TOWNSHIP BOARD OF EDUCATION, a body politic and corporate; Henry Helstoski, as Superintendent of the Schools of North Bergen Township and individually; and John Doe, being intended to be the names of all persons, presently unknown to plaintiff, that may have participated in the acts alleged herein, Defendants.

Civ. A. No. 85–5913.

United States District Court, D. New Jersey.

Jan. 27, 1989.

Michael T. Barrett, Greenberg & Prior, Princeton, N.J., for plaintiff.

Paul Giblin, Giblin & Giblin, Oradell, N.J., for defendants.

## OPINION

WOLIN, District Judge.

In this action brought under 42 U.S.C. § 1983, plaintiff Raymond P. Farley moves for summary judgment precluding defendants from re-litigating certain factual issues already decided by administrative proceedings in the State of New Jersey. Defendants North Bergen Township Board of Education ("the Board") and Henry Helstoski cross-move for summary judgment dismissing plaintiff's action. For the reasons set forth below, the Court will grant plaintiff's motion as against the Board, and preclude the Board from relitigating factual issues relating to Farley's transfer from his job as Principal, leaving open only the issue of damages. The Court denies plaintiff's motion, however, as against Helstoski. The Court also denies defendants' cross-motions for summary judgment.

## I. BACKGROUND

On December 23, 1985, plaintiff brought this action under 42 U.S.C. § 1983, alleging that the action of the Board in transferring him without his consent from his position of Principal of the North Bergen High School to the newly created, untenured position of Supervisor of Instruction deprived him of property without due process of law. in contravention of the Fourteenth Amendment. The disputed transfer of Farley took place on December 22, 1983, at a special meeting in which the Board appointed Farley to the position of Supervisor of Instruction upon the recommendation of

Superintendent Helstoski. Farley objected to his transfer from the tenured position of Principal to the new, untenured position of Supervisor of Instruction, which was created by the Board on November 22, 1983 and subsequently revised at the December 22, 1983 special meeting of the Board.

Plaintiff contends that he was transferred out of his position as Principal in order to make it available for a political supporter of the Superintendent. That political supporter, Raymond Dalton, was appointed acting principal of North Bergen High School at the special meeting held by the Board on December 22, 1983.

After his transfer, plaintiff instituted an administrative proceeding in the Office of Administrative Law for the State of New Jersey. The Administrative Law Judge considered the conflicting versions of why Farley was transferred and concluded that the reassignment of Farley from principal to Supervisor of Instruction was nonconsensual and in violation of his statutory rights of tenure and seniority. The ALJ also found that the Board acted improperly in establishing the position of Supervisor of Instruction.

The ALJ's decision was subsequently reviewed by the Commissioner of Education. In a February 21, 1985 decision, the Commissioner found that the Board did not act improperly in creating the Supervisor of Instruction position. However, the Commissioner upheld the ALJ's finding that the Board acted in bad faith in transferring Farley, without his consent, to the Supervisor of Instruction position. The Commissioner explicitly found that the testimony of Superintendent Heltoski that Farley's removal was not motivated by the desire to give the principal job to Dalton was "not credible." Therefore, the Commissioner ordered that Farley be reinstated as Principal of North Bergen High.

In December, 1985, plaintiff brought the present action. Plaintiff now moves for summary judgment, arguing that the Commissioner's decision should collaterally estop defendants from relitigating the facts surrounding Farley's transfer, apart from the issue of damages. Defendants, the Board and Heltoski, cross-move for summary judgment.

## II. DISCUSSION

In their cross-motions, defendants challenge the validity of plaintiff's 42 U.S.C. § 1983 action. As this is a threshold question, the Court will first consider defendants' cross-motions for summary judgment and then, in turn, consider plaintiff's motion to invoke collateral estoppel.

### A. *Defendants' Cross–Motions for Summary Judgment*

■ Plaintiff asserts that the Board's act of transferring him without his consent from his tenured position as Principal of North Bergen High School to the newly created position of Supervisor of Instruction deprived plaintiff of a property right without due process, entitling plaintiff to damages under 42 U.S.C. § 1983. Defendants contend that plaintiff has not suffered any cognizable deprivation of a property right.

The Supreme Court has held that certain intangible rights and benefits created by state rules or understandings can be property rights for purposes of the due process clause of the Fourteenth Amendment. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). In particular, tenure of a government employee is generally considered a "legitimate claim of entitlement" which cannot be "arbitrarily undermined" without implicating the due process clause. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). See also *Stana v. School Dist. of City of Pittsburgh*, 775 F.2d 122, 126 (3d Cir.1985) ("Property interests are often expressly created by state statutes or regulations, but they can also arise from written or unwritten state or local government policies or from 'mutually explicit understandings' between a government employer and employee").

In New Jersey, tenure is conferred upon educational personnel according to the statutory guidelines as set out in N.J.S.A. § 18A:28–5. Plaintiff, as a tenured Princi-

pal, could only be transferred from his position to another position with his consent, according to the terms of N.J.S.A. § 18A:28–6, which states:

Tenure upon transfer or promotion

Any such teaching staff member under tenure or eligible to obtain tenure under this chapter, who is transferred or promoted with his consent to another position covered by this chapter on or after July 1, 1962, shall not obtain tenure in the new position until after:

 (a) the expiration of a period of employment of two consecutive calendar years in the new position unless a shorter period is fixed by the employing board for such purpose; or

 (b) employment for two academic years in the new position together with employment in the new position at the beginning of the next succeeding academic year; or

 (c) employment in the new position within a period of any three consecutive academic years, for the equivalent of more than two academic years;

provided that the period of employment in such new position shall be included in determining the tenure and seniority rights in the former position held by such teaching staff member, and in the event the employment in such new position is terminated before tenure is obtained therein, if he then has tenure in the district or under said board of education, such teaching staff member shall be returned to his former position at the salary which he would have received had the transfer or promotion not occurred together with any increase to which he would have been entitled during the period of such transfer or promotion.

Defendants argue that § 18A:28–6 protected Farley from any loss of tenure due to his transfer, since it mandates return of the staff member to his old position in the event the new position is terminated. However, § 18A:28–6 implicitly requires that the consent of the staff member be obtained before any such transfer takes place. This statutory right to consent before being transferred is the "legitimate claim of entitlement," *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, which Farley was deprived of. Indeed, it is this lack of consent which the Commissioner of Education found to be determinative in the Commissioner's decision that Farley should be reinstated as Principal. Plaintiff's Brief in Support of Motion for Summary Judgment, Exhibit A, p. 38.

The Board's failure to obtain Farley's consent before transferring him thus deprived Farley of an entitlement established by § 18A:28–6. This deprivation of a property interest without due process can therefore support a federal claim under 42 U.S. C. § 1983.

■ Defendants further argue that, even if Farley had been deprived of a cognizable property right, any such deprivation was cured by plaintiff's access to administrative redress in the State of New Jersey. This argument raises the issue of when does a deprivation of property not rise to the level of a constitutional violation because of the existence of a meaningful post-deprivation state proceeding. The Supreme Court considered this question at length in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt,* the court considered the issue of "what process is due a person when an employee of a State negligently takes his property." 451 U.S. at 537, 101 S.Ct. at 1914. The court stated that "[t]he justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee.... That does not mean, of course, that the state can take property without providing a meaningful postdeprivation hearing." 451 U.S. at 541, 101 S.Ct. at 1916.

For purposes of the case at bar, *Parratt* frames the issue as whether the action of the Board in transferring Farley without his consent represented a "random and unauthorized" act which could subsequently be cured by the post-deprivation administrative remedy. In *Stana v. School Dist.*

*of City of Pittsburgh,* 775 F.2d 122 (1985), the Third Circuit considered such a question. *Stana* concerned a § 1983 action brought by a teacher alleging that a school district's failure to provide her with notice and an opportunity to be heard concerning a negative evaluation prior to its decision to bypass her for a teaching position violated the due process clause. The Third Circuit found that the teacher's right to remain on an eligibility list was an entitlement protected by due process requirements. The Third Circuit also found that the action of the school district was not random and unauthorized under the dictates of *Parratt.* The Court stated:

> Here, of course, a pretermination hearing was neither impracticable nor impossible. Thus, even if Pennsylvania had a procedure that might have provided Stana some redress, an issue which the parties dispute, that does not diminish the nature of the deprivation, which was the denial of procedural due process to Stana at a meaningful time before her name was effectively removed from the list.

*Stana,* 775 F.2d at 122. See also *DeSimone v. Board of Education, South Huntington,* 604 F.Supp. 1180 (E.D.N.Y. 1985) ("Here ... we deal not with random unauthorized acts by low level personnel which higher authorities could not have prevented by means of pre-deprivation process, but rather with an act by a Board of Education.").

The Third Circuit's holding in *Stana* leads this Court to find that the action of the Board in transferring Farley did not represent a random and unauthorized act which could be effectively cured by a post-deprivation hearing. The Board acted in its official capacity when it transferred Farley and there was no reason why the Board could not conduct a hearing or some other procedure before transferring Farley without his consent in contravention of his statutory right. Therefore, the fact that Farley had access to post-deprivation state administrative remedies which eventually resulted in his reinstatement does not vitiate Farley's § 1983 claim for violation of his constitutional right to procedural due process. As such, Farley can recover compensable damages sustained in the period between his transfer and the time of his reinstatement. See *Endicott v. Huddleston,* 644 F.2d 1208, 1216 (7th Cir.1980).

■ Defendants also contend that plaintiff's § 1983 action must fail because plaintiff has only alleged claims of emotional distress and damage to reputation. Defendants cite *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) to support this proposition. Such reliance is misplaced. *Paul v. Davis* merely holds that reputation alone does not implicate a liberty or property interest sufficient enough to invoke the procedural protection of the due process clause. However, the case does not stand for the proposition that even if a plaintiff has suffered deprivation of a constitutionally recognized property interest, such as tenure, the plaintiff is foreclosed from recovering for emotional and reputational damage caused by the deprivation. Indeed, in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court explicitly upheld the award of damages for mental and emotional distress in § 1983 actions as long as those damages are provable. The Court stated:

> In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

435 U.S. at 264, 98 S.Ct. at 1052.

Therefore, plaintiff can be compensated for emotional distress and reputational damage caused by the deprivation of his tenure rights as long as plaintiff can prove whatever damages he is alleging. See, *e.g., Orshan v. Macchiarola,* 570 F.Supp. 620 (E.D.N.Y.1983) (jury award of $30,000 for emotional distress and reputational harm upheld to principal deprived of tenure rights).

■ Finally, defendant Heltoski contends that plaintiff has not stated a valid

§ 1983 action against him because it was the Board and not Heltoski who voted to improperly remove Farley from his position. However, Heltoski understates his role in the transfer of Farley. The New Jersey ALJ found that the Board acted "upon the recommendation" of Heltoski with regard to the transfer of Farley and the filling of his position with Dalton. The Commissioner of Education found Heltoski's testimony that he did not desire to place Dalton into Farley's position not to be credible. In fact, the record indicates that Heltoski used his position as Superintendent to influence the Board to transfer Farley, and that such influence was used in bad faith and for Heltoski's personal benefit. This use of improper influence to prompt the Board to transfer Farley, if proven, could subject Heltoski to liability for damages asserted in Farley's § 1983 claim. Cf. *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 615 (8th Cir.1980) (private individual can be subject to § 1983 liability for improperly influencing public policy if purpose is to injure plaintiff).[1]

Since plaintiff has stated a valid § 1983 claim against both defendants, and his allegations of emotional distress and reputational damage can be compensable if sufficiently proven, defendants' motions for summary judgment dismissing plaintiff's § 1983 action must be denied.

B. *Plaintiff's Motion for Summary Judgment Collaterally Estopping Defendants From Re–Litigating Issues of Fact*

1. Collateral Estoppel Against the Board

Collateral estoppel is a tool courts can use to increase the efficiency of the judicial process by avoiding the needless re-litigation of fact issues already decided in another proceeding. In the context of § 1983 actions, the Supreme Court has held that there is no reason why traditional concepts of collateral estoppel cannot be employed by courts:

Nothing in the language of § 1983 remotely expresses any congressional intent to contravene the common law rules of preclusion....

Moreover, the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion.

*Allen v. McCurry*, 449 U.S. 90, 92–98, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980).

While *Allen* dealt with state court judgments, the Supreme Court expanded upon *Allen* in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), where the Court found state administrative proceedings could also serve as a basis for collateral estoppel in § 1983 actions. The court stated:

We also see no reason to suppose that Congress, in enacting the Reconstruction civil rights statues, wished to foreclose the adaption of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century. We have previously recognized that it is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity. [Citing *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)].

... giving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel: enforcing repose. This value, which encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources, *Allen v. McCurry, supra*, 449 U.S., at 94, 101 S.Ct., at 414, is equally implicated whether factfinding is done by a federal or state agency.

*Elliott*, 478 U.S. at 794, 106 S.Ct. at 3224.

 The Supreme Court's holding in *Elliott* clearly allows courts in § 1983 ac-

---

1. The case of *Wood v. Goodman*, 381 F.Supp. 413 (D.Mass.1974), *aff'd*, 516 F.2d 894 (1st Cir. 1975), relied upon by Heltoski, excuses discretionary conduct by school officials from § 1983 liability only if the official undertakes his official duties in good faith. In the case at bar, the Commissioner explicitly found an absence of good faith in the decision to transfer Farley.

tions to afford collateral estoppel effect to state administrative proceedings. However, defendant North Bergen Board of Education argues that because the Commissioner's decision did not determine if Farley's constitutional rights were violated, the Commissioner's decision cannot be used to collaterally estop defendant in Farley's § 1983 action. This argument confuses collateral estoppel with the concept of res judicata. The issue of whether Farley suffered deprivation of a constitutionally protected property right is necessarily decided by this Court, and has been largely decided in conjunction with defendants' cross-motions for summary judgment. See *supra.* However, the factual issues concerning the circumstances surrounding Farley's transfer which have been decided by the state administrative proceedings are findings which can be given collateral estoppel effect; in particular, the finding by the Commissioner that the Board acted improperly and in bad faith in transferring Farley, and that such transfer took place without Farley's consent. Plaintiff's Brief in Support of Motion for Summary Judgment, Exhibit A, p. 39.

Therefore, because the Commissioner's finding that the Board acted in bad faith can be accorded collateral estoppel effect, and given this Court's finding that Farley was deprived of a property interest which is entitled to due process protection, the only remaining issue concerning the Board is a determination of the damages which the Board's actions may have caused the plaintiff.

2. Collateral Estoppel Against Heltoski
■■■ While the Commissioner's findings preclude the Board from re-litigating fact issues related to Farley's transfer, the Commissioner's findings cannot also preclude Heltoski from litigating the fact issues surrounding his own role in the transfer of Farley. The Supreme Court has held that considerations of fairness should be carefully considered before allowing a party to use offensive collateral estoppel. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Considering that Heltoski was not even a party to the earlier administrative proceeding, collateral estoppel should not be invoked against him, as the Board cannot be said to have been the representative of Heltoski in the administrative proceeding. It is true that the state administrative proceeding did strongly implicate Heltoski in the improper transfer of Farley, and that Heltoski was a witness in the administrative proceeding; however, Heltoski cannot be said to have had such a full and fair opportunity to contest factual issues concerning his role in the Farley transfer that it would now be proper to allow the Commissioner's finding to collaterally estop Heltoski from litigating the relevant factual issues concerning his own liability. Therefore, plaintiff's motion for summary judgment precluding defendants from re-litigating issues of fact must be denied as against Heltoski.

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment precluding defendants from re-litigating factual issues already decided by administrative proceedings in the State of New Jersey is granted as to defendant North Bergen Township Board of Education and denied as to defendant Heltoski. The Court also denies defendants' cross-motions for summary judgment.