**F. Lynn GALBRAITH, Ed. D., Plaintiff,**

v.

**LENAPE REGIONAL HIGH SCHOOL DISTRICT, et al., Defendants.**

**Civil Action No. 96–2332.**

United States District Court, D. New Jersey.

May 16, 1997.

Richard M. Schall, Tomar, Simonoff, Adourian, O'Brian, Kaplan, Jacoby & Graziano, Haddonfield, NJ, Alan B. Epstein, Jablon, Epstein, Wolf & Drucker, Philadelphia, PA, for Plaintiff.

Ellis I. Medoway, Arthur H. Jones, Jr., Archer & Greiner, Haddonfield, NJ, for Defendants.

ORLOFSKY, District Judge:

Defendants, Lenape Regional High School District, Board of Education of Lenape Regional High School District ("Lenape Board" or "the Board"), and Daniel F. Hicks, Superintendent of Schools of Lenape Regional High School District, have moved for summary judgment on Plaintiff's complaint pursuant to Fed.R.Civ.P. 56. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331.

The issues presented by Defendants' motion require this Court to determine: (1) whether Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., New Jersey's Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5–1, et seq., and for breach of contract, are barred by either New Jersey's entire controversy doctrine or the doctrine of collateral estoppel; and (2) whether Plaintiff's abuse of process claim fails as a matter of law.

For the reasons that follow, I find that Plaintiff's Title VII, NJLAD and breach of contract claims are not barred by the entire controversy doctrine. However, I do find that Plaintiff's breach of contract claim is barred by the doctrine of collateral estoppel, and that Plaintiff's Title VII claim against Daniel Hicks and abuse of process claim against all of the Defendants fail as a matter of law. Accordingly, Defendants' motion for summary judgment will be granted in part, and denied in part.

## I. Facts and Procedural History

For purposes of Defendants' motion, the relevant facts are not in dispute. Plaintiff was hired by Defendants in 1974 to teach high school English in the Lenape Regional High School District. (Medoway Cert., Ex.1, ¶ 14). In January of 1974, Plaintiff was certified by the New Jersey Department of Education as a Teacher of English, and in May of 1977, she was certified as a Principal/Supervisor. (Plaintiff's Ex.A).

Defendants selected the Plaintiff for the additional position of Coordinator of Community Relations in 1977. (Plaintiff's Ex.B). In 1990, Plaintiff accepted the position of District Supervisor, Curriculum and Community Relations. (Medoway Cert., Ex.1, ¶ 14). Plaintiff received tenure as a supervisor in the Lenape Regional High School District in 1992. (Medoway Cert., Ex.1, ¶ 17).

At the close of the 1993–1994 school year, Plaintiff's position as Supervisor of Curriculum and Community Relations was eliminated. Because no other supervisory position was available at that time, Plaintiff accepted a position as an English teacher in the district. Shortly thereafter, the Supervisor of Humanities retired and that position became vacant. (Plaintiff's Ex.C). Although Plaintiff applied for this position, she was not selected to fill the vacancy.

On August 10, 1994, Plaintiff filed a verified petition with the New Jersey Commissioner of Education (the "Commissioner"), alleging that the Lenape Board violated her tenure rights as a supervisor by refusing to

appoint her to fill the Supervisor of Humanities position, and instead, appointing a non-tenured employee to that position. (Medoway Cert., Ex.1, ¶ 28, Ex.3). Plaintiff also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 25, 1995, alleging that the Defendants engaged in a continuing pattern and practice of improper and illegal sex discrimination. (Medoway Cert., Ex.7).

In July of 1995, the Commissioner of Education transferred Plaintiff's petition before him to the Office of Administrative Law for an initial determination. The matter was assigned to Administrative Law Judge Lillard E. Law, who on November 20, 1995, issued an Initial Decision that Plaintiff's tenure rights had been violated by the Lenape Board. (Medoway Cert., Ex.1, ¶ 29, Ex.4). The Commissioner of Education affirmed ALJ Law's decision on January 12, 1996. (Medoway Cert., Ex.1, ¶ 30, Ex.5). The Lenape Board appealed the Commissioner's decision to the New Jersey State Board of Education, which affirmed the Commissioner's determination on June 7, 1996. (Medoway Cert., Ex.8). The Lenape Board then appealed the decision of the State Board of Education to the New Jersey Superior Court, Appellate Division, on July 19, 1996. (Medoway Cert., Ex.9). This appeal is presently pending.

On May 17, 1996, Plaintiff filed her complaint in this Court, alleging sex discrimination and retaliation in violation of Title VII and the NJLAD, as well as breach of contract and malicious abuse of process.

## II. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also *Hersh v. Allen Products, Co.*, 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). The district court must grant summary judgment when

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir.1996).

For the purposes of this motion, the parties are in substantial agreement on the facts outlined above. Thus, this motion presents only questions of law and is ripe for summary adjudication. *Nation Wide, Inc. v. Scullin*, 256 F.Supp. 929, 932 (D.N.J.1966), aff'd, 377 F.2d 554 (3d Cir.1967).

## III. Discussion

The issues presented for resolution in this case require this Court to examine, once again, the extent of the preclusive effect of New Jersey's entire controversy doctrine. Specifically, in ruling on Defendants' motion, this Court must consider the preclusive effect of an administrative determination by the New Jersey State Commissioner of Education that the Lenape Board had violated Plaintiff's tenure rights on an action subsequently brought in this Court. Defendants contend that, because the Plaintiff failed to join her present Title VII, NJLAD and breach of contract claims in her prior action before the Commissioner of Education, those claims are now barred by New Jersey's entire controversy doctrine.

### A. *New Jersey's Entire Controversy Doctrine* [1]

 New Jersey's entire controversy doctrine is "a mandatory rule for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." *Cogdell v. Hospital Center at Orange*, 116 N.J. 7, 16, 560 A.2d 1169 (1989). As a result of the New Jersey's Supreme Court holding in *Cogdell*, the entire controversy doctrine was incorporated into Rule 4:30A of the New Jersey Court Rules, which provides in relevant part, that "[n]on-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire

---

1. As a "federal court hearing a federal cause of action," this Court "is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the

Full Faith and Credit Act ..." *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir.1997).

controversy doctrine." *See* Sylvia B. Pressler, *Rules Governing the Courts of the State of New Jersey, 1997 Edition,* Rule 4:30A (Gann).

> The fundamental principle behind the doctrine is that:
>
> the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.

*DiTrolio v. Antiles,* 142 N.J. 253, 267, 662 A.2d 494 (1995) (citing *Cogdell,* 116 N.J. at 15, 560 A.2d 1169). The entire controversy doctrine "is a reflection of the constitutional unification of the state courts and the comprehensive jurisdiction vested in the Superior Court established under our Constitution, which recognized the value in resolving related clams in one adjudication so that 'all matters in controversy between parties may be completely determined.' " *Mystic Isle Development Corp. v. Perskie & Nehmad,* 142 N.J. 310, 323, 662 A.2d 523 (1995) (citing N.J. Const., art. VI, § 3, ¶ 4).

The doctrine "has been extended to include all affirmative claims that a party might have against another party ... as well as joinder of all parties with a material interest in the controversy." *Circle Chevrolet v. Giordano, Halleran & Ciesla,* 142 N.J. 280, 289, 662 A.2d 509 (1995) (citing *Cogdell,* 116 N.J. at 23, 560 A.2d 1169) (extending application of doctrine to include joinder of parties with a material interest).

■ While the application of New Jersey's entire controversy doctrine requires neither a congruence of evidence, nor a compatibility of legal theories in both the first and second legal actions, it does require that both actions be brought in equally competent jurisdictions. *Thornton v. Potamkin Chevrolet,* 94 N.J. 1, 5, 462 A.2d 133 (1983). Therefore, if:

> the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court pre-

senting the omitted theory or ground should not be held precluded.

*Watkins v. Resorts Int'l Hotel & Casino, Inc.,* 124 N.J. 398, 413, 591 A.2d 592 (1991). In other words, "under the entire controversy doctrine, a party will not be barred from raising claims that he could not have brought in the initial action." *Jones v. Holvey,* 29 F.3d 828, 831 (3d Cir.1994). Accordingly, this Court's entire controversy inquiry is reduced to whether the Commissioner of Education is competent to rule on the Title VII, NJLAD and breach of contract claims brought by Plaintiff in the present action.

■ Although many similarities exist between administrative agencies and judicial tribunals, unlike a court, "[a]n administrative agency is not simply a neutral forum whose function is solely to decide the controversy presented to it." *City of Hackensack v. Winner,* 82 N.J. 1, 28, 410 A.2d 1146 (1980). Administrative agencies belong to a separate branch of government and are only empowered to "exercise executive power in administering legislative authority selectively delegated to them by statute." *Id.* In addition, "because administrative agencies serve in part to effectuate the ... obligation of the executive branch to see that laws are faithfully executed[,] ... in a sense, the public in an omnipresent party in all administrative actions." *Id.* at 30, 410 A.2d 1146.

■ Courts, on the other hand, "are constitutionally-founded, independent and impartial adjudicative tribunals constituted to hold and exercise the judicial power which emanates directly from the Constitution." *Id.* Thus, "procedures and techniques developed to handle the operation and business of the courts may not be transported *in toto* or imported wholesale into administrative agencies." *Id.* at 29, 410 A.2d 1146.

■ Therefore, while the entire controversy doctrine may preclude an action in this Court where there has been a prior administrative adjudication in a related matter, its strict application "must be tempered by a full appreciation of an administrative agency's statutory foundations, its executive nature, and its special jurisdictional and regulatory

concerns." *Id.* In other words, if the administrative agency before which the parties litigated the first action was not competent to decide the matters brought in the second action, then surely the entire controversy doctrine should not preclude the second action from going forward. *See Watkins,* 124 N.J. at 413, 591 A.2d 592.

■ The extent of the jurisdiction of the Commissioner of Education is set forth in N.J.S.A. § 18A:6–9, which provides:

The commissioner shall have jurisdiction to hear and determine without cost to the parties, all controversies and disputes arising under the school laws, except those governing higher education or under the rules of the state board or of the commissioner.

N.J.S.A. 18A:6–9. Thus, the statute clearly implies that "[w]here the controversy does *not* arise under the school laws, it is outside the Commissioner's jurisdiction even though it may pertain to school personnel." *Board of Education of East Brunswick Township v. Township Council of East Brunswick,* 48 N.J. 94, 102, 223 A.2d 481 (1966) (emphasis supplied). *See also Balsley v. North Hunterdon Board of Education,* 117 N.J. 434, 446–447, 568 A.2d 895 (1990).

■ Although Plaintiff's Title VII, NJLAD, and breach of contract claims in her present complaint relate to her public school employment, none of these claims "arise[s] under the school laws." *See* N.J.S.A. 18A:6–9. Indeed, New Jersey courts have specifically held that the Commissioner lacks jurisdiction over claims similar to those alleged by the Plaintiff in this case.

For example, in *Balsley,* 117 N.J. at 446–447, 568 A.2d 895, the New Jersey Supreme Court reversed the decision of the Appellate Division which sanctioned the Commissioner's invocation of the NJLAD's remedial authority. The Supreme Court found that, although the Commissioner could properly decide the claims which arose under the school laws, the Commissioner was without jurisdiction to fashion any form of relief under the NJLAD. In so holding, the court stated that, "under our decisional law and the general standards of the current rules of the Office of Administrative Law, the Commissioner of Education should not determine that claim for relief." *Id.* In noting that the plaintiff "should have filed [the NJLAD] claim in the Division on Civil Rights," *id.* at 447, 568 A.2d 895, the court implied that a subsequent action for relief under the NJLAD would not be barred, notwithstanding the plaintiff's earlier claim for a violation of the school laws brought before the Commissioner.

Similarly, in *Picogna v. Board of Education of Township of Cherry Hill,* 249 N.J.Super. 332, 592 A.2d 570 (App.Div.1991), the court found that a public school employee's claims against the Board of Education under the Conscientious Employee Protection Act, N.J.S.A. §§ 34:19–1 *et seq.,* and for breach of contract did not arise under the school laws and therefore, were "for the court, not the Commissioner, to decide." *Id.* at 335, 592 A.2d 570.

[16] Because the Commissioner of Education is not competent to decide Plaintiff's Title VII, NJLAD or breach of contract claims since the claims do not "arise under the school laws" of New Jersey, I find that the Plaintiff's failure to join those claims with her tenure violation claim brought before the Commissioner does not preclude her from maintaining her present action. Plaintiff's claims in this case are simply outside the reach of "the tentacles of the entire controversy doctrine." *Kelly v. Borough of Sayreville, New Jersey,* 107 F.3d 1073, 1080 (3d Cir.1997) (McKee, J., concurring).[2]

**2.** In support of their motion for summary judgment based upon the entire controversy doctrine, Defendants primarily rely upon the district court's decision in *Kelly v. Borough of Sayreville,* 927 F.Supp. 797 (D.N.J.1996), in which the court dismissed the plaintiff's complaint, finding that the plaintiff's failure to raise his § 1983 claim before New Jersey's Public Employment Relations Commission barred his later attempt to assert that claim in federal court, notwithstanding the Commission's well-established practice of refusing to hear constitutional claims. The district court further held that, and in any event, the complaint should be dismissed because it failed to state a claim upon which relief may be granted.

Prior to the filing of their motion for summary judgment, however, the Third Circuit affirmed the district court's dismissal of the plaintiff's

### B. *Collateral Estoppel*

[17–19] Whether Plaintiff's present claims are barred by New Jersey's entire controversy doctrine is an entirely separate question from whether her claims are barred by the doctrine of collateral estoppel. Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Company, Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). In other words, collateral estoppel "is a tool courts can use to increase the efficiency of the judicial process by avoiding the needless relitigation of fact issues already decided in another proceeding." *Farley v. North Bergen Township Board of Education*, 705 F.Supp. 223, 228 (D.N.J.1989). Indeed, it is clear that collateral estoppel may be invoked when "an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). *See also Jorden v. National Guard Bureau*, 877 F.2d 245, 249 (3d Cir.1989).

In her petition before the Commissioner, Plaintiff alleged that the Board's "failure to assign [her] to the position of Supervisor of Humanities or any other supervisor position held by a non-tenured supervisor is violative of [her] tenure rights." (Medoway Cert., Ex.3 at 2). In ruling on Plaintiff's petition before him, the Commissioner held that, by failing to assign the Plaintiff to the available Supervisor position, the Board violated Plaintiff's tenure rights afforded to her under N.J.S.A. §§ 18A:28–10 and –12, and ordered that she "be immediately placed in the position of Supervisor–Social Studies/Art/Music with back pay and compensation for benefits lost." (Medoway Cert., Ex.5 at 33).

In her present breach of contract claim, Plaintiff contends that:

40. Because plaintiff was a tenured professional teacher at defendant School District, with the appropriate certifications and endorsements, a contract of employment existed between her and defendant School District.

41. Defendants violated the terms of the contract of tenure between themselves and plaintiff by removing her from her position as District Supervisor, Curriculum and Community Relations, and by refusing her the position of Supervisor–Social Studies/Art/Music.

(Complaint ¶¶ 40, 41).

Thus, it is evident that Plaintiff's breach of contract claim is the same claim that she brought before the Commissioner. The Commissioner has already found that the Board violated Plaintiff's tenure rights, and ordered that the Plaintiff be reinstated to a supervisory position and receive back pay.

Accordingly, in ordering that the Plaintiff be reinstated and receive back pay, the Commissioner has already awarded the Plaintiff all the relief to which she would be entitled on her breach of contract claim.[3] In addition, the fact that the Commissioner's decision is presently on appeal to the New Jersey Appellate Division does not detract from its finality for purposes of collateral estoppel. Under the Restatement (Second) of Judgments, "[a]n administrative adjudication becomes preclusive when it has become

---

complaint, solely on the basis that the complaint failed to state a claim upon which relief may be granted. *Kelly*, 107 F.3d 1073 (3d Cir.1997). In so holding, the majority commented that "we need not consider the entire controversy ruling, though we note that we have significant reservations concerning the district court's disposition of that issue." *Id.* at 1074. Judge McKee, however, in his concurrence, expressly stated that he would "specifically hold that the district court erred in holding that Kelly's suit is barred by [the entire controversy] doctrine." *Id.* at 1078.

3. The damages to be awarded in a breach of contract claim "are limited to those losses which would have been reasonably foreseeable by the parties as a probable result of a breach." *Commerce Bank, N.A. v. DiMaria Construction, Inc.*, 300 N.J.Super. 9, 19, 692 A.2d 54 (App.Div.1997) (citing *Hadley v. Baxendale*, 9 Ex. 341, 145 Eng. Rep. 145 (1854)). Damages recoverable for a breach of contract are only those which are "reasonably certain and definite consequences of the breach as distinguished from the mere quantitative uncertainty." (*Tessmar v. Grosner*, 23 N.J. 193, 203, 128 A.2d 467, 472 (1957)).

final in accordance with the rules stated in §§ 13 and 14 [of the Restatement]. It is not necessary that the administrative adjudication has been reviewed and affirmed by a court." Restatement (Second) of Judgments § 83 cmt. a (1980). Section 13 of the Restatement, in turn, provides that "a judgment otherwise final remains so despite the taking of an appeal." *Id.* § 13 cmt. f. Both New Jersey and federal courts follow the Restatement in formulating their collateral estoppel doctrines. *See, e.g., Bressman v. Gash,* 131 N.J. 517, 526, 621 A.2d 476 (1993); *Ruyle v. Continental Oil Co.,* 44 F.3d 837, 846 (10th Cir.1994); *Facchiano v. United States Department of Labor,* 859 F.2d 1163, 1167 (3d Cir.1988). For these reasons, I find that Plaintiff's breach of contract claim is barred by the doctrine of collateral estoppel.[4]

In contrast, liability under Title VII and the NJLAD requires more than a finding that the Board violated Plaintiff's tenure rights. In order to prevail on these claims, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position which she sought; and (3) the employer continued to seek to fill the position after rejecting the plaintiff. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Bray v. Marriott Hotels,* 110 F.3d 986, 989–990 (3d Cir.1997).

Moreover, the remedies available to the Plaintiff in her Title VII and NJLAD claims are more comprehensive than those already awarded by the Commissioner. In addition to reinstatement and back pay, a successful plaintiff may receive compensatory and punitive damages, and attorneys' fees, under both Title VII and the NJLAD. *See Coleman v. Kaye,* 87 F.3d 1491, 1497 (3d Cir.1996); *Abrams v. Lightolier, Inc.,* 50

F.3d 1204, 1221 (3d Cir.1995); *Hurley v. Atlantic City Police Department,* 933 F.Supp. 396, 423 (D.N.J.1996). Such damages, however, cannot be awarded by the Commissioner of Education. *See Fallon v. Board of Education of the Scotch Plains–Fanwood School District,* 185 N.J.Super. 142, 145, 447 A.2d 607 (Law Div.1982) ("[t]he Commissioner of Education has consistently held that he lacks the requisite subject matter jurisdiction to award punitive damages, counsel fees and interest, which may properly be awarded only by the courts") (citations omitted). Therefore, I find that Plaintiff's Title VII and NJLAD claims are not barred by the doctrine of collateral estoppel.[5]

### C. *Plaintiff's Malicious Abuse of Process Claim*

In Count IV of her complaint, Plaintiff alleges that:

[t]he actions of defendants in appealing this issue of plaintiff's tenure rights as a supervisor constitute a malicious abuse of process, i.e., an improper, unlawful, harassing interference with plaintiff's lawful claim for adjudication of her tenure rights following the refusal by defendants to recognize those rights, without reasonable basis to do so in light of clear and long-established law.

(Complaint ¶ 44).

An action for malicious abuse of process "lies for the improper, unwarranted, and perverted use of process after it has been issued ... [*i.e.*], the employment of a process in a manner not contemplated by law." *Tedards v. Auty,* 232 N.J.Super. 541, 549, 557 A.2d 1030 (App.Div.1989) (citing *Ash v. Cohn,* 119 N.J.L. 54, 57, 194 A. 174 (E.&A.1937)). "Bad motives or malicious intent leading to the institution of a civil action

---

4. Although Defendant, Daniel Hicks, was not a party to the proceedings before the Commissioner, Plaintiff cannot maintain her breach of contract claim against him for the simple reason that no contractual relationship ever existed between Plaintiff and Daniel Hicks, her supervisor. Indeed, Plaintiff even alleges in her complaint that "a contract of employment existed between her and defendant School District." (Complaint ¶ 40).

5. As Plaintiff concedes in her brief, see Plaintiff's Brief at 13 n. 3, it is now well settled law in this Circuit that individual employees cannot be held liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1078 (3d Cir.1996) (in banc); *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542 (3d Cir.1996). For this reason, summary judgment will be granted in favor of Superintendent Daniel F. Hicks on Plaintiff's Title VII claim against him because such a claim cannot succeed as a matter of law.

are insufficient to support a cause of action for malicious abuse of process." *Fielder Agency v. Eldan Const. Corp.*, 152 N.J.Super. 344, 348, 377 A.2d 1220 (Law Div.1977). To succeed on a claim for malicious abuse of process, a plaintiff must demonstrate "some coercive or illegitimate use of the judicial process." *Id.*

■ In this case, the abuse of process that Plaintiff contends is malicious is the Lenape Board's appeal of the Commissioner's decision in favor of Plaintiff to the State Board of Education. Such an appeal is sanctioned by N.J.S.A. § 18A:6–27, which provides that the parties to a determination of the Commissioner have a statutory right of appeal to the State Board. As such, Lenape Board's appeal constituted a proper use of the judicial process.

■ Plaintiff has failed to present any evidence whatsoever of the Defendants' illegal or illegitimate use of the appellate process. A malicious abuse of process claim cannot be premised upon a sinister motive, alone. *First Fidelity Bancorporation v. First Fidelity Capital Corp.*, 723 F.Supp. 246, 248 (D.N.J.1989); *Fielder*, 152 N.J.Super. at 348, 377 A.2d 1220. Therefore, even if the "actions of defendant were wilful and malicious and were effected in reckless disregard of plaintiff's rights," as Plaintiff alleges, (Complaint ¶ 44), her claim must nonetheless fail. Accordingly, summary judgment will be granted in favor of the Defendants on Plaintiff's claim for malicious abuse of process.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted in part, and denied, in part. Summary judgment will be entered in favor of the Defendants on Plaintiff's Title VII claim against Defendant, Daniel Hicks, on Plaintiff's breach of contract claim, on Plaintiff's malicious abuse of process claim, and denied in all other respects. This Court will enter an appropriate order.

### ORDER

This matter having come before the Court on Defendants' motion for summary judg-

ment, pursuant to Fed.R.Civ.P. 56, Richard M. Schall, Esq., of Tomar, Simonoff, Adourian, O'Brian, Kaplan, Jacoby & Graziano, and Alan B. Epstein, Esq., of Jablon, Epstein, Wolf & Drucker, appearing on behalf of the Plaintiff, and Ellis I. Medoway, Esq., and Arthur H. Jones, Jr., Esq., of Archer & Greiner, A Professional Corporation, appearing on behalf of the Defendants; and,

The Court having considered the written submissions of the parties filed in support of, and in opposition to the motion; and,

For the reasons set forth in this Court's Opinion filed concurrently with this Order;

IT IS HEREBY ORDERED on this 16th day of May, 1997, that Defendants' motion for summary judgment is granted, in part, and denied, in part; and,

IT IS FURTHER ORDERED that summary judgment is entered in favor of the Defendants on Plaintiff's Title VII claim against Defendant, Daniel Hicks, on Plaintiff's breach of contract claim, and on Plaintiff's malicious abuse of process claim. In all other respects, Defendants' motion for summary judgment is denied.